11 U.S. 402
 7 Cranch 402
 3 L.Ed. 385
 THE MARYLAND INSURANCE COMPANY.
v.
WOOD.
 March 3, 1813
 
 ERROR to the Circuit Court for the district of Maryland, in an action of covenant on a policy upon the schooner William and Mary 'at and from Baltimore to Laguira, with liberty of one other neighboring port, and at and from them or either of them back to Baltimore'—'Warranted by the assured to be an American bottom, proof of which to be required in the United States only.'
 The former judgment of the Circuit Court, in this case, having been reversed (see ante, vol. 6, p. 29,) and the cause remanded for a new trial, the verdict and judgment were again in favor of the original Plaintiff. The Defendants, took only one bill of exceptions which stated the execution of the policy, the sailing of the vessel with proper documents as an American bottom from Baltimore on the 8th of March, 1805, upon the voyage insured; her arrival off Laguira on the 24th of the same month, where she remained three days laying off and on, vainly endeavoring to obtain permission to enter the port, and on the 31st sailed towards the port of Amsterdam, in the Island of Curracoa, by the direct and accustomed route, with a view and intention of ascertaining by enquiry of British ships of war, or other vessels, whether the port of Amsterdam was then in a state of blockade, and to enter it if it should not be blockaded, but if it should be blockaded, not to attempt to enter it, but to proceed to St. Thomas's or Porto Rico. That Amsterdam was a neighboring port to Laguira, being distant about 147 miles. That when she approached Amsterdam, being distant about 30 miles, the master discovered a British vessel at the distance of 21 miles, whereupon he altered the course of the schooner, and stood directly towards the British vessel for the purpose of inquiring whether Amsterdam was still in a state of blockade; that while so standing for the British vessel, which was a frigate then actually supporting the blockade of the port of Amsterdam, the schooner was captured by the frigate and sent into Jamaica, and there condemned for breach of the blockade of the port of Amsterdam, whereby she was wholly lost to the Plaintiff. That on the 16th of May, 1805, the Plaintiff having received intelligence of the capture, abandoned the vessel in due time to the underwriters, who refused to accept the abandonment.
 That on the 27th of October, 1803, the government of the United States made to the British government, through its charge d'affairs in the United States, a representation on the subject of a blockade, then recently notified, of the Islands of Martinique and Gaudalope; which representation is set forth at large in the bill of exceptions, being a letter from Mr. Madison, then Secretary of state, to Mr. Thornton, the British charge d'affairs, dated the 27th of October, 1803.
 That on the 5th of January, 1804, the British government, in consequence of that representation, issued an order to its commanding naval officer in the West Indies and to its Courts of vice admiralty there, relative to the blockade of Martinique and Gaudalope; which order is as follows:
 'Admiralty office, 5th January, 1804.
 SIR,
 Having communicated to the lords of the admiralty, lord Hawkesbury's letter of the 23d ult. enclosing the copy of a despatch, which his lordship had received from Mr. Thornton, his majesty's charge d'affairs in America, on the subject of the blockade of the Islands of Martinique and Gaudalope, together with the report of the advocate general thereupon. I have their lordships' commands to acquaint you for his lordships' information that they have sent orders to commodore Hood not to consider any blockade of those Islands as existing unless in respect of particular ports which may be actually invested, and then not to capture vessels bound to such ports unless they shall have been previously warned not to enter them; and that they have also sent the necessary directions on the subject to the judges of the vice admiralty Courts in the West Indies and America.
 I am, &c.
 EVAN NEPEAN.
 George Hammond, Esq.'
 That on the 12th of April, 1804, the British government, by its minister plenipotentiary in the United States, communicated the aforesaid order to the government of the United States who caused it to be immediately published in the public newspapers.
 That on the same 12th of April, 1804, the said British minister plenipotentiary officially made known to the government of the United States, that the siege of the island of Curracoa had been converted into a blockade, which communication was as follows:
 'Mr. Merry to Mr. Madison.
 Washington, April 12th, 1804.
 SIR,
 I have the honor to acquaint you that I have just received a letter from rear admiral, sir John Duckworth, commander in chief of his majesty's squadron at Jamaica, dated the second of last month, in which he desires me to communicate to the government of the United States, that he has found it expedient for his majesty's service to convert the siege, which he lately attempted of Curracoa into a blockade of that Island.
 I cannot doubt, sir, that this blockade will be conducted conformably to the instructions which, (as I have the honor to acquaint you in another letter of this date,) have been recently sent on this subject, to the commander in chief of his majesty's forces, and to the judges of the vice admiralty Courts in the West Indies, should the smallness of the Island of Curracoa still render necessary any distinction of the investment being confined to particular ports.
 I have the honor to be, &c.
 ANT. MERRY.'
 That Travers, the master of the schooner William and Mary, heard a report at Baltimore, before he sailed, that Amsterdam was in a state of blockade; and that he was informed, before he sailed from Baltimore, by the master of an American vessel, that about four months before the time of giving that information, he arrived with his vessel near the port of Amsterdam, and there met with a squadron of British ships of war then blockading that port, and was warned off by the commander of the squadron, with his register endorsed in the usual manner.
 That Travers in the course of his voyage fell in with a strong French squadron in lat. 15, long. 63, which was sailing westward. That the port of Amsterdam is in lat. 11 deg. 55 min. long. 68.
 That while laying off Laguira to endeavor to obtain permission to enter the port, or to anchor his vessel, he was informed by a merchant at Laguira, to whom he had been introduced by a letter, and through whom he made application for permission as aforesaid, that the port of Amsterdam was then free from blockade; and was advised by the said merchant to proceed thither with his vessel—that the port of Laguira and all the ports on the Spanish main were then shut against foreigners, whereby he was prevented from going on shore and from making enquiries otherwise than by writing from his vessel to some person on shore.
 That the Island of Buenos Ayres was then a dependency of Curracoa, distant from it about twenty milesleast, and is a small island having no port, except a road-stead about the middle of its length on the east side, where there was a small battery and military post. That the cruizing ground of vessels blockading Curracoa, was between that Island and Buenos Ayres, which latter was included in the blockade, as were also all the other ports of the Island of Curracoa. That Travers did not attempt to enter the port of Amsterdam, nor sail towards it with an intention of entering it if blockaded, but merely for the purpose of ascertaining, by any lawful and proper means in his power, whether it was still in a state of blockade, of entering it if it was not, and of proceeding elsewhere if it was.
 That when he sailed from Laguira as aforesaid he had, from the facts and circumstances above mentioned, reasonable ground of belief that the blockade had ceased, and had no means of obtaining any further information on the subject at any neighboring port or place.
 Whereupon the Plaintiff prayed the Court to instruct the jury that if they believed the matters so given in evidence by him, then his right of recovery in this action is not affected by the conduct of Travers in proceeding as aforesaid from Laguira towards Amsterdam for the purposes aforesaid, which instruction the Court gave, and also the further direction, that if they should believe that Travers intended, while at Laguira, to violate the blockade of Amsterdam, and attempted it by sailing towards that port, and within the limits of the cruizing ground; in such case his conduct was unlawful; and the Defendants were thereby discharged from any responsibility upon the policy.
 To this instruction the Defendants excepted and brought their writ of error.
 MARTIN, for Plaintiffs in error.
 When this case was here before it was erroneously supposed that the order of the 5th of January, 1804, applied to the Island of Curracoa, as well as to those of Gaudalope and Martinique. It was not until the 12th of April following, that the blockade of Curracoa was notified to our government by Mr. Merry, who gives his opinion that the former order would be extended to this blockade. But it is merely his opinion; he had no authority to bind his government upon that subject; and his opinion could not justify the master of this vessel in going to the blockading squadron for information.
 If he acted upon the information of the minister he acted at his peril. 5, Rob. 74, 234—1, Rob. 144. The Neptunus—2, Rob. 92. He ought to have called at Buenos Ayres for information.—Park, 408, 9, Marshall, 321.
 LIVINGSTON, J. Thought this case could not be distinguished from the one which was here before. It appears to be only an application to this Court to reverse its own decision.
 STORY, J. Thought the letter of Mr. Merry was conclusive upon the subject.
 JOHNSON, J. It does not appear to be so clear a case as the other.
 
 
 1
 MARSHALL, Ch. J. had formed no opinion upon this case. It seemed to him to be different from the other.
 
 
 2
 HARPER, for the Defendant in error, requested that the opinion of the Court might be given in writing.
 
 
 3
 MARSHALL, Ch. J. I understand the opinion of the Court to be, that the letter of Mr. Merry puts the case on the same ground as if the blockade had been of Martinique or Gaudalope.
 
 
 4
 HARPER. That is, that it extended to this case the benefit of the order of the 5th of January, 1804.
 
 
 5
 MARSHALL, Ch. J. I so understand it.
 
 
 6
 LIVINGSTON, J.
 
 
 7
 Afterwards delivered the opinion of the Court in writing, as follows:
 
 
 8
 It is the opinion of the Court, that the communication of the British minister to the American government on the 12th of April, 1804, relative to the blockade of Curracoa, furnished a sufficient excuse for the assured's proceeding towards that Island for the purpose of enquiring as to its continuance, and that his doing so was no violation of his neutrality.
 
 
 9
 The Court does not mean to be understood as giving any opinion on the effect of such conduct if no such communication had been made.
 
 
 10
 The judgment of the Circuit Court is affirmed with costs.